ESTELLE HOLLEY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed February 3, 1925.

Testimony that is merely cumulative may properly be excluded; and where the evidence amply sustains the verdict and the judgment rendered thereon, the judgment will be affirmed, no material or prejudicial errors appearing.

A Writ of Error to the Circuit Court for Escambia County; A. G. Campbell, Judge.

Judgment affirmed.

*Philip D. Beall, John M. Coe, J. McHenry Jones* and *Fred H. Davis,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *Marvin C. McIntosh,* Assistant Attorney General, for the State.

WHITFIELD, J.—Upon an indictment charging murder in the first degree by fatally stabbing one Alberta Rogers, the

plaintiff in error was convicted of manslaughter, and took writ of error.

A physician testified that the death was caused by "a stab in her chest," that "looked like a knife wound."

It seems that the deceased and the defendant were interested in the same man, each perhaps claiming him as her husband, though he was probably the husband of the defendant.

One of the witnesses testified that he was standing near the deceased and that she "asked me if I had seen her husband, and I told her 'no,' and the defendant coming up to them "just sprung to her and struck her," then the deceased "staggered and finally fell. I saw her dead the next day. I did not see any knife in this woman's hand. I saw a large thing, like a woman's purse. She did not open same in my presence." When the defendant "came to my place she was just talking to me, just laughing and talking, did not look excited or mad. She made no remarks about what she was going to do, and while she was talking Alberta said to me, 'where is my husband,' or 'have you seen my husband.' Alberta Rogers did not have a husband that I knew of, and I had been knowing her since she was a girl. She did not live in Pensacola, but she would come back and forth. I do not know who she was talking about as her husband. She had a handbag in her hand. After she passed me I could not see the little bag, she had it in her hand. I cannot swear that Alberta did not open the handbag as she passed me because I do not know whether she did or not, and I do not know whether she reached in there for something."

Another witness testified: "Alberta Rogers is dead; she was stabbed and died soon afterwards. I was present when she died. I was going down Tarragona street, near Claude Hamerick's Pressing Shop and Alberta stopped and hollered to Claude 'Hey,' and this woman was stand-

ing there. I did not understand what she said; she hollered at him and he hollered back at her, and she turned and said something else to him and just as she did this woman walked between him and Alberta and stabbed her. I was right alongside when she stabbed Alberta. She looked back and went up Tarragona street. Alberta did not have a knife that I know of. She had a purse in her hand. She did not open the purse, nor get a knife out of it, or a pin, or an ice pick. Alberta said, 'Oh that woman stabbed me,' and she said 'I know who it was, it wasn't nobody but Estelle,' and she fell then and did not say anything else. Alberta had a little vanity box, about this long (indicating about nine inches long) in her hand. There was a big crowd there talking and jostling one another."

The defendant testified that she had had a difficulty with the deceased on account of the former's husband, after which "she went home and so did I. She said 'I will get you,' and walked off. I heard a threat she had made about that time, there was two, it was Mary Moore told me that Alberta said she was going to kill me. That was when Alberta was living at Pace with my husband, and she was going to kill me about it or have him. That is what Mary Moore told me Alberta said to her. Q. Did you know a man named Isom Bondurant? A. Yes sir. Q. What did he say? A. Mr. Thompson: We object to that because there hasn't been a sufficient overt act shown. The Court: The objection is sustained. Mr. Beall: I expect to show that by this party if the court please. We note an exception to the court's ruling; "that while she was at Clarence Hamrick's place 'Alberta walked up and said, 'Have you seen my husband?' and he said 'Who?' and she said 'My husband Bertram?' and I said not a word, and then I said 'I am his wife, you can see me.' And she started toward me, and I stabbed her. I stabbed her with a little knife about that long, (Indicating about 2½-inch blade). I

did not have the knife open waiting for her. I had it in my pocket; and took it out and opened it. I did this because she had made the threat when she was going to kill me, and she made a start for me, she opened this pocket book she was carrying, and came toward me when I said I was Bertram's wife, she stepped back and opened this and she came toward me and we came together. I ran toward her for self defense and she started toward me, and I would rather get her first than she get me. And thereupon the defendant's attorney propounded to the witness the following question: Q. 'Did Isom Bondurant tell you of any threat that Alberta Rogers made against you?' But the State thereupon objected to the propounding of the said question to the said witness, on the following grounds: 'We object because there has not been a sufficient overt act shown,' and thereupon the court stated: 'I don't see that an overt act has been sufficiently shown,' and thereupon the State's attorney further objected: 'This witness herself don't say she opened the vanity case,' and that thereupon sustained the said objection, and refused to allow the said witness to answer said interrogatory, to which ruling of the court the defendant then and there excepted.''

Even if the testimony of a witness as to the deceased having a little vanity box about nine inches in her hand and the testimony of the defendant that the deceased ''opened this pocketbook she was carrying, and came towards me'' may be regarded as evidence of an overt act on the part of the deceased indicating an intent to injure the defendant, which would justify the admission of testimony as to threats made by the deceased against the defendant, there was testimony by the defendant as to threats made directly to her by the deceased as well as of other threats by the deceased against the defendant made to other persons. The proffered testimony by the defendant as to what

Isom Bondurant said was merely cumulative even if it had relation to threats made by the deceased against the defendant. No possible harm could have resulted to the defendant by sustaining an objection to the question: ''Did Isom Bondurant tell you of any threat that Alberta Rogers made against you?''

The evidence is ample to sustain the verdict and no prejudicial error is made to appear, therefore the judgment is affirmed.

TAYLOR, C. J., AND BROWNE AND TERRELL, J. J., concur.